JOHN P. KRISTENSEN (SBN 224132)
DAVID L. WEISBERG (SBN 211675)
CHRISTINA M. LE (SBN 237697)
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  310-507-7924
Fax:  310-507-7906
*john@kristensenlaw.com*
*david@kristensenlaw.com*
*christina@kristensenlaw.com*

***Attorneys for Plaintiff and all others
similarly situated***

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| ADRIAN BACON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>ARTIFICIAL GRASS LIQUIDATORS LOCATION 1, INC.; and DOES 1 through 10, inclusive, and each of them,<br><br>        Defendant. | ) Case No.:<br>)<br>) **CLASS ACTION**<br>)<br>) **COMPLAINT FOR VIOLATIONS**<br>) **OF:**<br>)<br>) (1)    Violations of the Telephone<br>)        Consumer Protection Act, 47<br>)        U.S.C. § 227, et seq. (Text<br>)        Messages)<br>)<br>)<br>)<br>)<br>) **DEMAND FOR JURY TRIAL**<br>)<br>)<br>)<br>) |

1    Plaintiff ADRIAN BACON ("Plaintiff' or "Bacon"), individually and on

2    behalf of all other persons similarly situated, alleges the following upon

3    information and belief based upon personal knowledge:

4                              **NATURE OF THE CASE**

5        1.      Plaintiff brings this action for himself and others similarly situated

6    seeking damages and any other available legal or equitable remedies resulting

7    from the illegal actions of defendants ARTIFICAL GRASS LIQUIDATORS

8    LOCATION 1, INC. ("Defendant" or "Artificial Grass") and DOES 1 through 50

9    (collectively referred to throughout portions of this Class Action Complaint as

10   "Defendants"), in contacting Plaintiff as well as knowingly, and/or willfully

11   contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone

12   Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), thereby invading

13   Plaintiff's privacy.

14       2.      Defendant is a synthetic turf company. In an effort to solicit potential

15   customers, Artificial Grass recruited, or employed agents to use machines that had

16   the capacity to store a list of phone numbers and send out blast texts to cellular

17   telephone calls, *en masse*, to consumers across the country. On information and

18   belief, Defendants and or its agents purchase "leads" containing consumers'

19   contact information and create electronic databases from which Defendants makes

20   automated calls.

21       3.      Defendants conducted wide scale telemarketing campaigns and

22   repeatedly made contact with consumers' telephones—whose numbers appear on

23   the National Do Not Call Registry—without consent, all in violation of the

24   Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

25       4.      The Telephone Consumer Protection Act, 47 U.S.C. § 227 (the

26   "TCPA") was enacted to protect consumers from unsolicited telephone contact

27   exactly like those alleged in this case. In response to Defendant's unlawful

28   conduct, Plaintiff files the instant lawsuit and seek an injunction requiring

1  Defendant to cease all unsolicited telephone contacting activities and an award of
2  statutory damages to the members of the Class under the TCPA up to $500.00 per
3  violation, together with court costs, reasonable attorneys' fees, and up to three
4  times actual monetary loss damages (for knowing and/or willful violations).

5       5.     This case arises from the transmissions of text messages to the
6  cellular telephones of Plaintiff and members of the class for the purpose of
7  promoting Defendant's services.

8       6.     By sending the illegal texts at issue in this Complaint, Defendants
9  caused Plaintiff and the members of a putative Class of consumers (defined
10 below) actual harm, including the aggravation, nuisance, and invasion of privacy
11 that necessarily accompanies the receipt of unsolicited and harassing text
12 messages, as well as the monies paid to their carriers for the receipt of such text
13 messages.

14      7.     Plaintiff brings this class action against Defendant to secure redress
15 because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT
16 ("TCPA"), 47 U.S.C § 227, *et seq.* by sending text messages to Plaintiff and other
17 class members' telephones.

18      8.     The TCPA was enacted to protect consumers from unsolicited text
19 messages exactly like those alleged in this case. In response to Artificial Grass's
20 unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction
21 requiring Artificial Grass to halt its illegal conduct, including to cease all
22 unsolicited text messaging activities, which has resulted in the invasion of
23 privacy, harassment, aggravation, and disruption of the daily life of thousands of
24 individuals nationwide. Plaintiff also seeks statutory damages on behalf of
25 himself and members of the class, and any other available legal or equitable
26 remedies resulting from the illegal actions of Defendant.

27

28

## **PARTIES**

9. Plaintiff ADRIAN BACON is a natural person and citizen in the county of Orange, California.

10. Defendant ARTIFICIAL GRASS LIQUIDATORS ("Defendant" or "Artificial Grass") is California company with its principal place of business at 28071 Diaz Road, Suite A, Temecula, California 92590. Defendant may be served with process by serving its registered agent, Dillion Eric Georgian at 28071 Diaz Road, Suite A, Temecula, California 92590.

11. Plaintiff does not yet know the identity of Defendant's employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute and were not merely tangentially involved. They will be named, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants. Artificial Grass and the yet to be identified DOES are collectively referred to herein as "Defendants")

12.     Defendant Artificial Grass has at least 6 different entities registered as location 1-6 respectively.

13.     Whenever in this complaint it is alleged that Defendant(s) committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

15.     The Court has personal jurisdiction over Defendant because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. It is also the District were Artificial Grass located its principal place of business.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

17.     Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

///

///

///

///

## LEGAL BASIS FOR THE CLAIMS

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

19.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

20.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

21.     As of October 16, 2013, unless the recipient has given prior express written consent,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

---

[1]     Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

22.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

23.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

///

24.    In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

25.    The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

26.    There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

**A.    DO NOT CALL VIOLATIONS OF THE TCPA**

27.    More Than One Call within Any 12 Month Period. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

28.    Calls to Residential Lines on the Do Not Call List. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-

1  call registry of persons who do not wish to receive telephone solicitations that is

2  maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

3      29.   Or, Wireless Lines on the Do Not Call List. Owners of wireless

4  telephone numbers (aka mobile or cellular phones) receive the same protections

5  from the Do Not Call provision as owners or subscribers of wireline ("landline")

6  phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c)

7  and (d) "are applicable to any person or entity making telephone solicitations or

8  telemarketing calls to wireless telephone numbers to the extent described in the

9  Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules

10  and Regulations Implementing the Telephone Consumer Protection Act of

11  1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone
> solicitations to residential telephone subscribers must comply with
> time of day restrictions and must institute procedures for maintaining
> do-not-call lists. For the reasons described above, we conclude that
> these rules apply to calls made to wireless telephone numbers. We
> believe that wireless subscribers should be afforded the same
> protections as wireline subscribers.

16      30.   The Affirmative Defense of Prior Express Consent. The Ninth Circuit

17  has defined "express consent" to mean "clearly and unmistakably stated."

18  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009)

19  ("*Satterfield*")). "Prior express consent is an affirmative defense for which the

20  defendant bears the burden of proof." See *Grant v. Capital Management Services,*

21  *L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not

22  an element of a TCPA plaintiff's prima facie case, but rather is an affirmative

23  defense for which the defendant bears the burden of proof"); see also *Robbins v.*

24  *Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22,

25  2013).

26      31.   Telemarketers Must Maintain a List of Persons Requesting Not to

27  Receive Calls. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity

28

shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made) and will not apply to

affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

## COMMON FACTUAL ALLEGATIONS

32.    Defendant Artificial Grass Liquidators is a synthetic turf company. The Defendant has engaged in a scheme, to place text messages, *en masse*, to consumers across the country. On information and belief, Defendants and or their agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendants makes automated text messages that are not hand delivered.

33.    In Defendant's overzealous attempt to market its products, Defendant placed repeated and unwanted texts to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

34.    Defendants knowingly made these telemarketing text messages without the prior express written consent of the recipients, and knowingly continue to message them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF ADRIAN BACON

35.    On or about July 5, 2018, Defendants using an automated text-messaging platform, caused the following text message to be transmitted to Plaintiff's cellular telephone:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16





17    36.    The message was sent from the number 774-53, a five digit SMS

18  number, which is a dedicated short code number used for mass texts, not hand

19  delivered messages.

20    37.    Defendant's text message constitutes telemarketing because it

21  promotes Defendant's goods and/or services, including its "Pro 110 Artificial

22  Grass."

23    38.    At no point in time did Plaintiff provide Defendants with his express

24  written consent to be contacted by text messages using an ATDS.

25    39.    At no point in time did Plaintiff provide Defendant with his express

26  consent or express permission to be contacted by text messages using an ATDS

27  ///

28  ///

40.     At no point in time did Plaintiff provide Artificial Grass Liquidators with his express written consent to be contacted by text messages using an ATDS.

41.     Plaintiff is the subscriber and/or sole user of the cellular telephone, at (714) 328-****.

42.     Upon information and belief, Defendant caused the same or similar text messages to be transmitted to the cellular telephones of consumers throughout the country.

43.     The impersonal and generic nature of Defendant's text message establishes that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

44.     Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the current capacity or present ability to store numbers using a random or sequential generator, and to dial such numbers.  Additionally, the equipment used by Defendant has the capacity to dial numbers from a list of numbers,

KRISTENSEN WEISBERG LLP   Attorneys for Plaintiffs

automatically without human intervention.

45.     Defendants knowingly made these telemarketing text messages without the prior express written consent of the recipients, and knowingly continue to text them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

46.     Defendants' calls/texts constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

47.     Defendants' unsolicited telemarketing calls/texts caused Plaintiff extreme aggravation and occupied his telephone line.

48.     Plaintiff has reason to believe Defendant texted thousands of telephone customers to market their products and services.

49.     Plaintiff's overriding interest is ensuring Defendants cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

50.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls voice and text to individuals whose numbers are registered on the Do Not Call Registry as well as illegal text messages to anyone cellphones.

51.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all illegal telemarketing and spam activities and an award of statutory damages to the class numbers, together with costs and reasonable attorneys' fees.

## STANDING

52.     Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to

the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**A.   INJURY IN FACT**

53.    Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.  *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Robins v. Spokeo,* 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

54.    Plaintiff's injuries must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.  *(Id.)*

55.    For an injury to be concrete it must be a de facto injury, meaning it actually exists.  In the present case, Plaintiff took the affirmative step of enrolling himself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to their telephones. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are present in this case. (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

56.    Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing

"legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

57.     For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* at 7. Furthermore, Plaintiff is the person who pays for the phone, and are the regular carrier and user of the phone. All of these injuries are particular to Plaintiff.

**B.      TRACEABLE TO THE CONDUCT OF DEFENDANT**

58.     Plaintiffs must allege at the pleading stage of the case facts to show that their injury is traceable to the conduct of Defendant. In this case, Plaintiff satisfies this requirement by alleging that Defendant, and/or agents of Defendant on behalf of Defendant, placed illegal text messages to Plaintiff's phone.

59.     In the instant case, Defendant placed text messages to Plaintiff's wireless/cellular phone.

**C.      INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

60.     The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In the present case, Plaintiff's Prayers for Relief include a request for damages for each text made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

61.     Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016) and in the context of a TCPA claim, as explained by the Ninth Circuit in

*Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

**A.    CLASS ALLEGATIONS**

62.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following class defined as follows (the "Class"):

> **"Text Class":** All individuals within the United States, who within four years prior to the filing of the initial Complaint in this action, were sent a text message, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, for the purposes of promoting Defendants' service, without their prior express written consent.

63.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendants' counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released; and (7) individuals for whom Defendants have record of consent to place telemarketing calls.

64.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

65.    Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

66.     Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC, and/or contacted Plaintiff and members of the Class using a pre-recorded voice for telemarketing purposes without first obtaining prior consent.

**B.     NUMEROSITY**

67.     The exact sizes of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

68.     On information and belief, Defendants made text messages to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

**C.     COMMONALITY AND PREDOMINANCE**

69.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

70.     Common questions for the Class include, but are not necessarily limited to the following:

(a)     Whether Defendants' conduct violated the TCPA;

(b)     Whether Defendants systematically made text messages to consumers who did not previously provide Defendant and/or their agents with prior express written consent to receive such messages after July 5, 2018;

(c)     Whether members of the Classes are entitled to up to three times actual monetary loss based on the willfulness of Defendants' conduct; and

(d)     Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

71.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely violates the TCPA is correct, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D.     TYPICALITY**

72.     Plaintiff's claims are typical of the claims of the other members of the Classes.

73.     Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

**E.     ADEQUATE REPRESENTATION**

74.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

75.     Plaintiff has no interest antagonistic to those of the Defendants and their agents, and Defendants have no defenses unique to Plaintiff.

**F.     POLICIES GENERALLY APPLICABLE TO THE CLASS**

76.     This class action is appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes members, and making final injunctive relief appropriate with respect to the Classes as a whole.

77.     Defendants' practices challenged herein apply to and affect the Classes' members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

**G.     SUPERIORITY**

78.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient

1    adjudication of this controversy given that joinder of all parties is impracticable.

2        79.    The damages suffered by the individual members of the Classes will

3    likely be relatively small, especially given the burden and expense of individual

4    prosecution of the complex litigation necessitated by Defendants' actions.

5        80.    Thus, it would be virtually impossible for the individual members of

6    the Classes to obtain effective relief from Defendants' misconduct.

7        81.    Even if members of the Classes could sustain such individual

8    litigation, it would still not be preferable to a class action, because individual

9    litigation would increase the delay and expense to all parties due to the complex

10    legal and factual controversies presented in this Complaint.

11        82.    By contrast, a class action presents far fewer management difficulties

12    and provides the benefits of single adjudication, economy of scale, and

13    comprehensive supervision by a single court. Economies of time, effort and

14    expense will be fostered, and uniformity of decisions ensured.

15                    **FIRST CAUSE OF ACTION**

16            **VIOLATION OF TCPA, 47 U.S.C. § 227(B)**

17        **("Illegal Text Claim" on behalf of Plaintiff and the Text Class)**

18        83.    Plaintiff re-alleges and incorporates by reference each preceding

19    paragraph as though set forth at length herein.

20        84.    It is a violation of the TCPA to make "any call (other than a call

21    made for emergency purposes or made with the prior express consent of the called

22    party) using any automatic telephone dialing system or an artificial or prerecorded

23    voice…to any telephone number assigned to a…cellular telephone service…." 47

24    U.S.C. § 227(b)(1)(A)(iii).

25        85.    "Automatic telephone dialing system" refers to any equipment that

26    has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v.*

27    *Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9,

28    2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone

KRISTENSEN WEISBERG LLP
Attorneys for Plaintiffs

1   Consumer Protection Act of 1991: Request of ACA International for Clarification
2   and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

3       86.    Defendant – or third parties directed by Defendant – used equipment
4   having the capacity to dial numbers without human intervention to make non-
5   emergency text messages to the cellular telephones of Plaintiff and the other
6   members of the Text Class.

7       87.    These calls were made without regard to whether Defendant had first
8   obtained express written consent to make such calls. In fact, Defendants did not
9   have prior express written consent to call the cell phones of Plaintiff and Text
10  Class Members when the subject calls were made.

11      88.    Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an
12  automatic telephone dialing system to make non-emergency text messages to the
13  cell phones of Plaintiff and the other members of the putative Class without their
14  prior express consent.

15      89.    As a result of Defendant's conduct, and pursuant to § 227(b)(3) of
16  the TCPA, Plaintiff and the other members of the putative Class were harmed and
17  are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff
18  and the class are also entitled to an injunction against future calls.

19      90.    To the extent Defendants' misconduct is determined to be willful and
20  knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), award up to three
21  times the amount of statutory damages recoverable by the members of the Class.

22                           **ATTORNEY'S FEES**

23      91.    Each and every allegation contained in the foregoing paragraphs is
24  re-alleged as if fully rewritten herein.

25      92.    Plaintiff is entitled to recover reasonable attorney fees under Rule 23
26  of the Federal Rules of Civil Procedure, California law, and requests the
27  attorneys' fees be awarded.
28  ///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

(a)     An order certifying the Text Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, Kristensen Weisberg, LLP as lead Class Counsel;

(b)     An order certifying the DNC Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, Kristensen Weisberg, LLP as lead Class Counsel;

(c)     An award of actual and statutory damages for each and every violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

(d)     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

(e)     An injunction requiring Defendant and Defendant's agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

(f)     Pre-judgment and post-judgment interest on monetary relief;

(g)     An award of reasonable attorneys' fees and court costs; and

///
///
///
///
///

(h)    All other and further relief as the Court deems necessary, just, and proper.

Dated: July 10, 2018        Respectfully submitted,

By: */s/ John P. Kristensen*

John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
Fax: (310) 507-7906
*john@kristensenlaw.com*
*david@kristensenlaw.com*
*christina@kristensenlaw.com*
**Attorneys for Plaintiffs**

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for all such triable claims.


Dated:  July 10, 2018                           Respectfully submitted,

                                    By:   */s/ John P. Kristensen*
_____

                                          John P. Kristensen (SBN 224132)
                                          David L. Weisberg (SBN 211675)
                                          Christina M. Le (SBN 237697)
                                          **KRISTENSEN WEISBERG, LLP**
                                          12540 Beatrice Street, Suite 200
                                          Los Angeles, California 90066
                                          Telephone:  (310) 507-7924
                                          Fax:  (310) 507-7906
                                          *john@kristensenlaw.com*
                                          *david@kristensenlaw.com*
                                          *christina@kristensenlaw.com*
                                          **Attorneys for Plaintiffs**